UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMY DEMAR, INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF
PAUL J. SIRIANNI AND ADMINISTRATRIX
OF THE ESTATE OF GLORIA M. SIRIANNI,

                        Plaintiff,

    v.                          1:05-cv-0103

D.L. PETERSON TRUST,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action against the D.L. Peterson Trust asserting claims of negligence and seeking to recover damages for personal injury to Plaintiff Amy Demar and for the wrongful death of Paul and Gloria Sirianni. Currently before the Court are cross-motions seeking to preclude certain expert testimony. Defendant moves to preclude: (1) Dr. Abraham Phillip from offering an opinion on the issue of the effect of seatbelt use; and (2) Plaintiffs' rebuttal experts (Robert Burns and David Gushue) from testifying at all. Plaintiff moves to preclude Defendant's seatbelt expert, Thomas Lacek, and to dismiss the seatbelt defense.

**I.    FACTS**

Defendant D.L. Peterson Trust (the "Trust") owned a certain Ford Explorer motor vehicle. The Trust leased the vehicle to GlaxoSmithKline, the employer of Plaintiff Amy

DeMar. On July 30, 2004, Plaintiff's spouse, Randy DeMar, was operating the vehicle eastbound on the New York State Thruway in the Town of Montezuma, County of Cayuga, State of New York. Randy DeMar was seated in the driver's seat. Amy DeMar was seated in the passenger's seat. Both driver and front seat passenger were wearing seat belts. Paul and Gloria Sirianni were seated in the back seat of the vehicle. Neither of them were wearing a seat belt.

At approximately 1:00 p.m., the vehicle left the road, traveled over the rumble strips on the side of the road, entered the median, and then rolled over several times before coming to rest upside down. Paul and Gloria Sirianni were ejected from the vehicle. Paul Sirianni never regained consciousness and was pronounced dead at the scene.

Plaintiff then commenced the instant action on behalf of herself and as administratrix of the estates of Paul Sirianni and Gloria Sirianni.

## II.     STANDARD OF REVIEW

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. That Rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In reviewing the admissibility of expert testimony, "the district court has a 'gatekeeping' function under Rule 702 - it is charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786 (1993)).

> As the Second Circuit has explained:
>
> In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Next, the district court must determine whether the proffered testimony has a sufficiently reliable foundation to permit it to be considered.  In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case.  In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Amorgianos, 303 F.3d at 265 (internal alterations, quotations, and citations omitted). "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." Id.  "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand.  A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible.  The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." Id. (internal quotations and citation omitted).

## III. DISCUSSION

### a. Dr. Abraham Phillip

The first dispute is over Plaintiff's expert, Dr. Abraham Phillip. Dr. Phillip is pathologist employed by the Onondaga County Medical Examiner's Office. It is clear that Phillip has extensive experience in performing autopsies, including autopsies performed on people who have died in car accidents. As such, Phillip is familiar with the types and manner of injuries sustained by persons in car accidents. Phillip certainly would be qualified to testify as to the cause of the injury; that is, whether it was caused by a blunt impact or other means. For the reasons that follow, the Court remains doubtful, however, that Phillip should be permitted to testify concerning the seatbelt defense and whether the use of a seatbelt could have, or would have, lessened the injuries in this case. The Court similarly has doubt whether Phillip has provided an adequate basis for his conclusions as to how the decedents sustained blunt injury (*e.g.* striking the roof of the vehicle and/or striking the rear of the front seats) and whether the use of seatbelts would have lessened and/or prevented these injuries.

Phillip conducted the autopsies on the decedents and prepared the autopsy reports. Phillip concluded that Paul Sirianni sustained a head injury when his body was propelled against the roof of the car. The apparent basis of this conclusion is because of a laceration to Paul Sirianni's forehead, with abrasions and contusions to the face. Phillip further concluded that Paul Sirianni sustained his chest and hand injuries when his body hit the back side of the vehicle's front seat. Phillip did not know the type of front seat in the vehicle. Phillip stated that Gloria Sirianni sustained her injuries when she struck the back of the front seat of the car. Phillip noted that neither Paul nor Gloria Sirianni exhibited signs of road rash

or graze abrasions which are typically seen when persons are ejected from a fast moving vehicle.

Phillip's report also made conclusions concerning the likely impact upon the Siriannis had they been using seatbelts. Phillip stated that, in his opinion, to a reasonable degree of medical certainty, the Siriannis would have sustained their injuries regardless of whether they used a seatbelt. In support of his conclusions, Phillip cited some statistics regarding the reduction in injuries and deaths in all types of accidents through seatbelt use and noted the "randomness" that the body suffers in a car accident. Phillip further stated that injuries to vehicle occupants is related to several key factors including: mass of the vehicle, speed of the vehicle at impact, and the extent to which the occupants were protected from the impact of vehicle parts against the body and not merely whether the occupant was ejected from the vehicle or the extent to which the occupant's movement was restrained. Phillip concluded that "[a]ssuming for the sake of argument that there is a uniform 40% reduction in severity of injury of all motor vehicle accidents, with seat belt use, the decedents would still have suffered serious injury, which could have resulted in their death. The fact that the two decedents were in their 70s, with all the frailties that implies, only makes it highly likely that serious morbidity or mortality would have been the outcome."

Phillip's conclusions are predicated solely upon his physical examination of the bodies. Phillip did not perform any accident reconstruction or engage in any mechanical studies concerning the effect of a rolling car on the human body. Phillip never observed the accident scene, the vehicle, or discussed the matter with any relevant witnesses, including the police or other medical personnel who were on the scene. Phillip was not aware of the direction in which the vehicle first started to roll. Phillip also stated he did not know how far

Paul Sirianna was ejected from the vehicle or through what portion of the car he was ejected. Phillip did observe some pictures of the post-accident vehicle. Phillip also was unaware of the mass or speed of the vehicle at the time of the accident (other than knowing it was a "high" speed) despite his statement that such information are "key" to the analysis.

At deposition, Phillip testified that he believed that Paul Sirianni's head struck the roof of the car. However, Phillip could not state what part of the roof was struck. Although Phillip stated that the basis for his conclusion that Paul Sirianni's head struck the roof of the vehicle was the laceration to the forehead, Plaintiff has not identified any portion of Phillip's deposition testimony wherein he explains why the laceration sustained by Sirianni was likely to be caused by the roof of the vehicle or why the laceration could not have been sustained by some other means, namely when Paul Sirianni was ejected from the vehicle and landed on the ground. Thus, there appears to be a gap between the evidence (the laceration) and the expert's conclusion (that the laceration was caused by roof of the vehicle).

Phillip also opined that Paul Sirianni sustained injuries when he struck the seat in front of him. When asked at deposition for the basis of the statement that Paul Sirianni struck the seat directly in front of him, Phillip responded "I have no basis for that." Phillip Dep. at 113. Phillip offered a similar explanation for his conclusion that Gloria Sirianni sustained her injuries by striking the back of the front seats. Thus, there appears to be no grounds for permitting Phillip to testify whether the chest injuries were in fact caused by the Siriannis striking the back of the front seats.

Phillips also did not consider the nature of the injuries sustained by the driver and the passenger who were wearing seatbelts, did not sustain life-threatening injuries and, of course, were involved in the same car accident. Furthermore, Phillip testified that the

decedents' "frailties" support the conclusion that the use of seatbelts would not have made a difference. However, the only "frailties" of which Phillip was aware concerning Paul Sirianni was heart disease. With respect to Gloria Sirianni, her only frailty was that she was thin. Plaintiff has pointed to no evidence explaining why either of these "frailties" (if they be frailties at all) would support a conclusion that the decedents would have died regardless of whether they used seatbelts. Finally, Plaintiff has not pointed to any evidence or testimony by Phillip explaining why the injuries sustained by the decedents would not have occurred if they had been wearing seatbelts.

For the foregoing reasons, the Court believes that Dr. Phillip should not be permitted to testify about the effect of a seatbelt and about the sources of the blunt trauma to the decedents. The Court will, however, reserve its final decision until trial at which time it can better evaluate the particular evidence to be offered, the reasons for the testimony, and the basis for any opinions or conclusions.

**b.    Robert Burns**

Defendant seeks to exclude the testimony of Robert Burns because it is not proper rebuttal evidence and because it is cumulative of the testimony of New York State Trooper Miller. Although Burns concurs with certain of Trooper Miller's findings, the brunt of Burns's report concerns attacking the methodologies used by Defendant's expert, Thomas Lasek. Thus, the testimony does not appear to be cumulative. If, at trial, there appears to be cumulative testimony, then the Defendant may make an appropriate objection.

Next, Defendant contends that Burns's report is not proper rebuttal testimony because it attacks Lasek's methodologies rather than contradicting or rebutting Lasek's conclusions. Defendant's argument takes an overly narrow look at rebuttal evidence. Although one can

refute an opinion or conclusion with contrary conclusions or evidence, an opinion or conclusion also can be proven to be false by demonstrating that the means by which the opinion or conclusion were reached were faulty. Thus, Burns's report consists of proper rebuttal testimony.

### c.    David Gushue

Defendant next seeks to preclude the testimony of David Gushue primarily on the ground that he is not qualified to provide expert testimony. Based upon his significant training and practical experience, it appears that Dr. Gushue is qualified to render an opinion on the effect of seat belt use in this accident. The Court will, however, reserve final judgment pending a proffer at or before trial. Defendant also seeks to preclude Dr. Gushue from testifying on the ground that "he has not performed any of the studies or design criteria that he believes are important factors to arrive at a conclusion to a degree of reasonable certainty with regard to the performance of a restraint systems in a rollover crash." This contention may well be true. It appears to the Court, however, that Dr. Gushue is being proffered not to give an opinion as to the effect of seatbelt use in this case, but to challenge the methodologies used by Defendants' expert, Thomas Lacek. Dr. Gushue's opinions on the proper methodologies to be used in this case may be used to discredit Dr. Lacek's opinions. Accordingly, it currently appears that Dr. Gushue's opinion would be admissible for this purpose. Again, however, the Court will reserve final judgment until immediately before, or during, trial.

### d.    Thomas Lacek

Defendants' expert, Thomas Lacek, opines that the Siriannis were not wearing their seatbelts at the time of the accident, had the Siriannis been wearing their seatbelts they

would not have died, and had the Siriannis been using their seat belts their injuries would have been no worse than those sustained by the front seat passengers, who were wearing seat belts. Plaintiff moves to preclude Defendants' expert, Thomas Lacek, from testifying on the ground that he is unqualified and his opinions are unreliable. Indeed, Mr. Lacek does have limited education in the area of biomechanics. He does, however, have a degree in mechanical engineering, he is a member of the Society of Automotive Engineers and the Association for the Advancement of Automotive Medicine, and he has attended conferences in biomechanic reasearch, crash performance, crash reconstructions and crash injury countermeasures. Moreover, Lacek has worked for Robson Forensic, Inc. for over fifteen years. Robson Forensic specializes in the investigation and analysis of accidents. Thus, Lacek has significant practical experience in this area. Accordingly, it appears that Mr. Lacek does have the qualifications to express an expert opinion on whether the Siriannis were using seatbelts at the time of the accident and the effects of the failure to use seatbelts on their movement within the vehicle and their ejections from the vehicle. However, Lacek has no medical training or background and, therefore, is not qualified to testify with respect to the cause of death, whether death could have been avoided through the use of seatbelts, or whether the injuries could have been lessened through the use of seatbelts.

  Plaintiff next contends that Mr. Lacek's opinions are unreliable. Although Plaintiff identifies many factors that Mr. Lacek did not know, Mr. Lacek provided reasonable explanations as to why those factors were not pertinent to his analysis. It is for a jury to determine whether Mr. Lacek's analysis is unbelievable because of his failure to know such things as: what portions of the vehicle the Siriannis had contact with while still in the vehicle; the number of times the vehicle rolled over; the speed of the vehicle at the time of the roll;

measurements concerning the amount of intrusion caused by the roof deformation with regard to each passenger, etc. As Mr. Lacek explained at deposition, much of that information was irrelevant to him because he was not asked to determine how the Siriannis' died or to explain the nature of their injuries, but, rather, whether the Siriannis were likely to have sustained the serious injuries that they did had they been using seat belts. Plaintiff also puts much on the fact that Mr. Lacek did not account for the possibility of head injuries notwithstanding the use of seat belts. However, Mr. Lacek offered the reasonable explanation that the damage to the vehicle was not consistent with a significant head strike to the frame of the vehicle and that, based on the impact of the accident on the front passengers (who were using seat belts), such injuries were unlikely to happen in this case. In sum, the foundation of Mr. Lacek's analysis appears to be reliable. Any discrepancies or failures in Mr. Lacek's analysis can be attacked on cross-examination and the jury can decide the issues of credibility. Once again, however, the Court will reserve final judgment until immediately before, or during, trial.

### e.     Bruce Gorsak

Plaintiffs seek to preclude the testimony of Bruce Gorsak on the grounds that they have stipulated to his opinion - that the Siriannis were not wearing seatbelts at the time of the accident. To the extent Gorsak's testimony is duplicative, it may be precluded. Gorsak may, however, have information concerning his examination of the vehicle that may be pertinent to other aspects of this case. Accordingly, the motion to preclude his testimony is likely to be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court makes a preliminary finding that: (1) Dr. Phillip should not be permitted to testify about the effect of a seatbelt and about the sources of the blunt trauma to the decedents; (2) Dr. Burn's rebuttal testimony is admissible; (3) Dr. Gushue's rebuttal testimony is admissible; (3) Bruce Gorsak's testimony is admissible; and (4) Thomas Lacek's testimony should be admitted, but that he is unqualified to testify regarding the cause of death to the Siriannis, whether the use of seatbelts would have prevented death, and/or the extent to which the use of seatbelts would have lessened the Siriannis's injuries. Lacek is qualified to testify regarding whether the Siriannis were using seatbelts and the mechanical implications on the human body of failing to use seatbelts in the accident at issue here. Because Defendant's expert appears to have a reliable basis for concluding that the use of a seat belt would have mitigated the negative mechanical effects of the accident on the Siriannis's bodies, from which the jury could reasonably infer that the injuries sustained by the Siriannis would have been lessened had they been using seatbelts, Plaintiffs' motion to preclude the seat belt defense is DENIED. As stated herein, the parties may renew these motions at trial based upon a proper foundation.

IT IS SO ORDERED.

Dated: October 13, 2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge